UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:10-CV-147

PAUL DANIEL BENNETT; CHRIS
ENDERSBY; EXCELLENT PROPERTIES,
LLC; PENIEL ENTERPRISES, INC.;
RICHARD A. PERSSON; ANDREW V.
PODRAY; R&S OGEE VENTURES, LLC;
CALVIN L. RYBERG; H. CARL RYBERG;
CAROL WILLERS; MARK & CHRISTY
SIEBERT; JEFF WILSON; & 2R OGEE
VENTURES, LLC                                                                                      PLAINTIFFS

v.

HUNTER DURHAM and
DURHAM & ZORNES                                                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motions to Dismiss (Docket #16, 38). Plaintiffs have responded (Docket #25, 39). Defendants have replied (Docket #33). This matter is now ripe for adjudication. For the following reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiffs are investors who, between 2004 and 2007, were allegedly "defrauded by Defendants in connection with the offering and sale of unregistered securities in the form of interests in partnerships and joint ventures in various oil and gas drilling enterprises sponsored by Mammoth Resource Partners, Inc., and its affiliates (collectively "Mammoth")." Pl.'s Resp., DN 25, p. 2. Plaintiffs filed this action on September 10, 2010, against Hunter Durham and his law firm, Durham & Zornes. Plaintiffs' Amended Complaint asserts seven causes of action. The first five allege violations of Section 292.480(1) of the Kentucky Securities Act against both

Defendants. The sixth cause of action alleges violation of Section 292.480(4) of the Kentucky Securities Act against Hunter Durham. Finally, the seventh cause of action alleges common law fraud against both Defendants. Defendants filed a motion to dismiss on October 14, 2010. Plaintiffs filed a motion for leave to amend the Complaint on December 1, 2010. The Court granted Plaintiffs' motion to amend on February 14, 2011, and permitted Defendants to supplement their motion to dismiss. The Court now considers the pending motion to dismiss.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## DISCUSSION

Defendants have moved to dismiss all seven counts of the Complaint, arguing that they are not subject to liability under the cited provisions of the Kentucky Securities Act, the Complaint fails to state a claim for common law fraud, and any remaining claims are time-barred.

**I.      § 292.480(1) of the Kentucky Securities Act**

Kentucky adopted the Uniform Securities Act in 1961, as codified in Kentucky Revised Statutes Chapter 292. *Dolomite Energy, LLC v. Commonwealth of Ky. Office of Fin. Inst.*, 269 S.W.3d 883, 885 (Ky. Ct. App. 2008). The purpose of Chapter 292, or Kentucky's Blue Sky Law, is to

> [p]rotect investors by preventing investment fraud and related illegal conduct or, if this fraud or illegal conduct has already occurred, remedying, where possible, the harm done to investors through active implementation and application of this chapter's enforcement powers[.]

Ky. Rev. Stat. Ann. § 292.530(1). "Essentially, Blue Sky Laws place upon the seller of a security a duty of full disclosure relevant to the issuance of the security." *J. Stan Developments, LLC v. Lindo*, No. 2008-CA-001796-MR, 2009 WL 3878084, at *1 (Ky. Ct. App. Nov. 20, 2009) (citing *Sec. Exch. Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)). "In other words, one cannot 'promise the sky,' and fail to disclose the pitfalls of the deal." *Id.*

Section 292.480(1) describes the civil liabilities one may face for a violation of Chapter 292:

> Any person, who offers or sells a security in violation of this chapter or of any rules or orders promulgated hereunder or offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact

necessary in order to make the statement made in the light of the circumstances under which they are made not misleading, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security.

Ky. Rev. Stat. Ann. § 292.480(1). Plaintiff's first three causes of action seek recovery for violations of this section predicated on alleged violations of other provisions of the Kentucky Securities Act. The fourth and fifth causes of action are claims for violations of section 292.480(1) itself, predicated on alleged failures to disclose and violations of an Agreed Order.[1] Defendants argue that all five of these counts must be dismissed because Plaintiffs have failed to allege sufficient facts to demonstrate that Defendants are members of the class of persons subject to liability under section 292.480(1).

The language of section 292.480(1) makes clear that, to be held liable under that section, one must offer or sell a security. *See* Ky. Rev. Stat. Ann. § 292.480(1). Therefore, the Court must decide whether, based upon the allegations in the Complaint, Durham was an offeror or seller of the securities at issue. The Court may look to federal law for guidance since "Kentucky state courts and federal courts applying Kentucky law have consistently noted that the language of Kentucky's Blue Sky statute parallels federal securities law, and have construed Section 292 as sharing the same purpose as federal securities law." *Booth v. Verity, Inc.*, 124 F. Supp. 2d

---

[1] Hunter Durham represented Mammoth in connection with a First Agreed Order entered on March 1, 2005, in Franklin County Circuit Court. (Compl. ¶¶ 33-34.) In that Order, Mammoth admitted violations of the Kentucky Securities Act and agreed not to violate the Act in the future. (Compl. ¶¶ 34-36.) The First Agreed Order is attached to the Complaint as Exhibit 18.

4

452, 459 (W.D. Ky. 2000) (citations omitted). Section 292.480 "parallels Section 12(2) of the Securities Act of 1933 ("Section 12")." *Id.* at 463.

The Supreme Court addressed those persons who could be liable under Section 12 in *Pinter v. Dahl*, 486 U.S. 622 (1988). The Court explained:

> [T]he Securities Act defines the operative terms of § 12(1). Section 2(3) defines "sale" or "sell" to include "every contract of sale or disposition of a security or interest in a security, for value" and the terms "offer to sell," "offer for sale," or "offer" to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." 15 U.S.C. § 77b(3). Under these definitions, the range of persons potentially liable under § 12(1) is not limited to persons who pass title.

*Id.* at 643. The Supreme Court went on to note that solicitation is one such activity which could render a person liable under the Section 12. *Id.* at 644. Persons are not, however, exposed to liability solely through their "mere participation in unlawful sales transactions." *Id.* at 650. Inclusion of such individuals could potentially "expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services," to liability under Section 12(1). *Id.* at 651; *Riedel v. Acutote of Colo.*, 773 F. Supp. 1055, 1062 (S.D. Ohio 1991) ("Not included by the statute are those who merely give 'gratuitous advice' or professionals, such as attorneys or accountants, whose participation is confined to providing professional services.").

Defendant Hunter Durham is a Kentucky licensed attorney who is a partner of Defendant Durham & Zornes. Durham represented and advised Mammoth by preparing private placement memoranda ("PPMs") and joint venture agreements. These items were later provided to Plaintiffs in connection with sixteen securities offerings. Durham faced similar allegations in connection with a different corporation in a case decided in this district on November 16, 2010.

5

*See Clayton v. Heartland Res., Inc.*, No. 1:08CV-94-JHM, 2010 WL 4778740 (W.D. Ky. Nov. 16, 2010). In that case, Judge McKinley granted Durham's motion for summary judgment on this very issue, finding that "preparing PPMs and making oneself available to answer questions from potential investors are actions that are consistent with the rendering of professional services by an attorney and do not make one an offeror or seller of securities." *Id.* at *9. Citing *Pinter* as the appropriate standard, Judge McKinley noted that "[t]he actions that Plaintiffs contend make Durham a solicitor or seller of securities are merely those of a lawyer rendering professional services." *Id.* at *9.

The Court has reviewed the Complaint and finds that Plaintiffs have failed to allege sufficient facts to support a cause of action under section 292.480(1). Plaintiffs allege that Defendants prepared and issued PPMs, prepared and issued joint venture agreements, and made themselves available to answer questions from participants. Plaintiffs fail to allege that Defendants ever actually received questions from participants or provided false information in response to a question from a potential investor. *Id.* at *11 ("A willingness to speak to potential investors, in and of itself, does not illustrate active assistance where the defendant never in fact speaks to the plaintiffs."). Plaintiffs also allege that Durham represented Mammoth in connection with the First Agreed Order. Even taking these allegations as true, however, the facts demonstrate that Durham's actions were "those of a lawyer rendering professional services." *Id.* at *9. Durham was not a party to the First Agreed Order; rather, he was acting in a representative capacity. The other alleged acts by Durham are the same acts considered by Judge McKinley in *Clayton*, which held that Durham was not an offeror, seller, or solicitor. *See id.*

Plaintiffs' remaining allegations are not factual in nature, but are instead legal conclusions. For instance, Plaintiffs repeatedly allege "Defendants were primary participants in the offer and sale of securities as set forth herein." Compl., DN 1, p. 21. A plaintiff's complaint, however may not rest on "mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. And as already noted, the facts that *are* alleged do not support Plaintiff's legal conclusion that Defendants were offerors, sellers, or solicitors of securities. Accordingly, Plaintiffs' first five causes of action should be dismissed.

**II.     § 292.480(4) of the Kentucky Securities Act**

Kentucky Revised Statutes section 292.480(4) applies to agents of sellers and purchasers. This section states:

> Every person who directly or indirectly controls a seller or purchaser liable under subsection (1) or (2) of this section, every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of a seller or purchaser who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase is also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Ky. Rev. Stat. Ann. § 292.480(4). "Agent" is defined as "any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." Ky. Rev. Stat. Ann. § 292.310(1).

Judge McKinley also addressed section 292.480(4) in *Clayton*. 2010 WL 4778740 at *10-11. After noting that this section is interpreted as "imposing aiding and abetting liability on those who materially assist others in violating the state's securities laws" in other jurisdictions, Judge McKinley acknowledged that Kentucky has so far only held "'any person who facilitates

7

another person's securities fraud becomes vicariously liable absent an affirmative demonstration of good faith.'" *Id.* at \*10 (quoting *Senior Healthcare Ins. & Fin. Serv., Inc. v. Clementi*, No. 2006-CA-001348-MR, 2007 WL 1784158, at \*1 (Ky. Ct. App. June 8, 2007)). The court looked at three cases from other jurisdictions analyzing the actions for which an attorney could be held liable under provisions similar to section 292.480(4), and held that Durham was not an agent because he did nothing more than act as legal counsel. *Id.* (citing *Ward v. Bullis*, 748 N.W.2d 397, 405 (N.D. 2008); *Johnson v. Colip*, 658 N.E.2d 575, 578 (Ind. 1995); *Baker, Watts & Co. v. Miles & Stockbridge*, 620 A.2d 356, 367-68 (Md. Ct. Spec. App. 1993), *superseded on other grounds by* Md. Rule 2-504). In other words, "for a lawyer to be considered to have effected or attempted to effect the purchase or sale of securities he or she must have actively assisted in offering securities for sale, solicited offers to buy, or actually performed the sale." *Id.* (citing *Baker*, 620 A.2d at 368).

Plaintiffs argue that this case is distinguishable from *Clayton*. Plaintiffs note that Durham signed the March 1, 2005, First Agreed Order, in which Mammoth admitted to violating the Kentucky Securities Act and agreed not to violate the Act in the future. Durham signed as someone "having seen and agreed to" the mandates of the order. Four days later, Durham allegedly prepared and issued a PPM in violation of that Order. Plaintiffs argue this conduct is more egregious than that of Durham in the *Clayton* case. Plaintiffs' argument misses the point, however, as Durham signed the First Agreed Order in his role as attorney for Mammoth. He is not bound by the Agreed Order as he was not a party to that action. Therefore, this fact fails to distinguish the present case from *Clayton*, as Defendants were still acting as legal counsel.

Plaintiffs' allegations fail to allege that Defendants represented Mammoth in effecting

8

the purchase or sale of securities. *See Baker*, 620 A.2d at 368 ("To rise to the level of 'effecting' the purchase or sale of securities, the attorney must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale."). As noted above, preparing documents and merely making oneself available to answer questions of potential investors (without actually speaking to any said investors) is not enough for the Court to find liability under section 292.480(4). *Accord Clayton v. Heartland Res., Inc.*, No. 1:08CV-94-M, 2009 WL 790175, at *6 (W.D. Ky. Mar. 24, 2009) ("Even if answering questions of a potential investor regarding the securities was sufficient to establish that an attorney was an offeror or seller . . . there is no allegation that any such contact was made prior to the sale of the securities at issue."). The Court agrees with the *Clayton* decision and finds that Plaintiffs have failed to allege sufficient facts to hold Defendants liable under section 292.480(4).

### III.     Common Law Fraud

Plaintiff's next claim is for common law fraud. In order for Plaintiff's claim to succeed, Plaintiff must establish the following elements of fraud by clear and convincing evidence:

      a)    material representation
      b)    which is false
      c)    known to be false or made recklessly
      d)    made with inducement to be acted upon
      e)    acted in reliance thereon and
      f)    causing injury.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. 1978)). Defendants argue that Plaintiffs have not met this burden because the PPMs and Joint Venture Agreements were the only sources of contact between Durham and Plaintiffs, and these are statements of Durham's clients, not Durham himself.

"Although an attorney generally does not owe a duty to a third party . . . 'an attorney still may be liable for damages to a third party because of events arising out of his representation of a client if the attorney's acts are fraudulent or tortious and result in injury to that third person . . . .'" *Clayton*, 2009 WL 790175, at *8 (quoting *Baker v. Coombs*, 219 S.W.3d 204, 208 (Ky. Ct. App. 2007)). Plaintiffs' Complaint sufficiently alleges that the PPMs and Joint Venture agreements prepared by Durham contained alleged false material misrepresentations and that Durham was aware that of these representations at the time he drafted these documents. Plaintiffs also submitted the PPMs and Joint Venture Agreements as exhibits attached to their Complaint, which the Court may also consider when deciding a motion to dismiss. *See, e.g.*, *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). The Court finds that Plaintiffs have satisfied the requirements of Rule 9(b) in pleading with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b).[2]

Defendants also allege that Plaintiffs have failed to assert facts supporting causation and injury. The Court disagrees. Although Plaintiffs' cause of action for common law fraud only briefly explains that "Plaintiffs are entitled to recover consequential damages, plus prejudgment interest, in an amount to be proven at trial," Am. Compl. DN 37, ¶ 112, other portions of the Amended Complaint briefly describe injuries Plaintiffs incurred because of the misrepresentations in the PPMs and Joint Venture Agreements. For instance, some of the PPMs

---

[2]To satisfy Rule 9(b)'s particularity requirement, the Complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). Intent or knowledge "may be alleged generally." Fed. R. Civ. P. 9(b).

state that the partnerships are limited partnerships, while they are actually general partnerships in which the investors are liable for the partnership's obligations. In addition, the availability of tax deductions was misrepresented, resulting in investors being unable to lawfully claim deductions in the year costs were incurred. Generally, Plaintiffs allege that Defendants' alleged misrepresentations affected their decisionmaking in terms of whether to invest. The Court finds that, at this stage in the litigation, Plaintiffs' Amended Complaint sufficiently pleads causation.

## IV. Statute of Limitations

Finally, Defendants argue that all of Plaintiffs' claims are time-barred. As noted above, Plaintiffs allege that the events giving rise to the Complaint occurred between 2004 and 2007. This action was filed on September 10, 2010. Under section 292.480(5) of Kentucky's Blue Sky Law, "[n]o person may sue under this section more than three (3) years after the date the occurrence of the act, omission, or transaction constituting a violation of this chapter was discovered, or in the exercise of reasonable care should have been discovered." Ky. Rev. Stat. Ann. § 292.480(5). Claims for misrepresentation must be brought within five years of the discovery of fraud. *See* Ky. Rev. Stat. Ann. §§ 413.120, .130.

Plaintiffs' Amended Complaint states that they discovered Defendants' liability during the course of litigation involving Mammoth (filed October 2, 2007).[3] Specifically, Plaintiffs state that this discovery "occurred upon their receipt and analysis on August 19, 2010 of responses of the defendants in the *Bennett, et al. v. Mammoth Resource Partners, et al.* case to written discovery requests propounded by the Plaintiffs." Am. Compl., DN 37, ¶ 15. Thus,

---

[3]*Bennett v. Mammoth Resource Partners*, No. 1:07-CV-168-JHM-ERG (W.D. Ky. filed Oct. 2, 2007).

11

Plaintiffs assert, the earliest date of discovery should be October 2, 2007, and the statute of limitations did not expire until October 2, 2010, three weeks after this lawsuit was filed.[4] Therefore, all claims were timely filed. In contrast, Defendants argue that the Amended Complaint fails to describe the circumstances and discovery of Plaintiffs' injuries such that the statute of limitations period would be tolled. Moreover, Plaintiffs' stated reason for the delay in the response brief is inadequate because Plaintiffs fail to explain why they could not have, in the exercise of reasonable care, discovered their claims at an earlier time.

Although the statute of limitations is an affirmative defense to be raised in the answer, "[w]hen it affirmatively appears from the face of the complaint that the time for bringing the claim has passed, the plaintiff cannot 'escape the statute by saying nothing.'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992)). "[P]laintiffs may not simply rely on the bare assertion that they were unaware of the facts underlying their cause of action." *Id.* (citations omitted). In addition, a plaintiff must do more than "plead only the date of discovery" to toll the statute of limitations. *Hoover*, 958 F.2d at 745 (noting that, for instance, a plaintiff may need to properly allege fraudulent concealment).

In this case, it appears from the face of the Complaint that some of Plaintiffs' claims are time-barred. Therefore, Plaintiffs have an affirmative duty to explain why the statute of limitations period should be tolled. Asserting that the claims were not discovered until October 2, 2007, is insufficient under Sixth Circuit case law. Plaintiffs acknowledge in their Amended

---

[4]Under Plaintiffs' logic and section 413.120, the statute of limitations period will have expired on October 2, 2012, for Plaintiffs' misrepresentation claim. *See* Ky. Rev. Stat. Ann. § 413.120.

Complaint that Hunter Durham is identified in many of the PPMs as counsel who prepared such memorandums, yet Plaintiffs have failed to explain why their cause of action against Defendants could not have, in the exercise of reasonable care, been discovered at an earlier time. Therefore, it appears that some of Plaintiffs' claims may be time-barred. At this early stage in the litigation, however, and taking into account the various factual developments leading up to this lawsuit and the possibility of continuing violations, the Court declines to pinpoint exact dates at this time. In addition, the issue of discoverability is a factual issue best examined after further discovery in this matter.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motions to Dismiss (DN 16, 38) are GRANTED IN PART and DENIED IN PART.